592 N.E.2d 628 (1992)
229 Ill. App.3d 321
170 Ill.Dec. 192
In re PROPOSED INCORPORATION OF THE VILLAGE OF VOLO
Burnell C. Russell et al., Petitioners-Appellants and Cross-Appellees
v.
David John Lorenz et al., Respondents-Appellees and Cross-Appellants.
No. 2-91-0303.
Appellate Court of Illinois, Second District.
May 7, 1992.
*629 J. William Braithwaite, Terrence J. Griffin, Eugene J. Kelley, Jr., Arnstein & Lehr, Barrington, for Village of Volo.
Michael C. Poper, Thomas M. Foley, Stephen M. Haugh, Michael C. Poper, P.C., Crystal Lake, for Lake County.
Justice NICKELS delivered the opinion of the court:
On June 25, 1990, petitioners Burnell Russell and other owners of land and electors residing in an unincorporated area of Lake County filed in the circuit court of Lake County a petition to incorporate certain territory as the Village of Volo (Volo) pursuant to the Illinois Municipal Code (Municipal Code) (Ill.Rev.Stat.1989, ch. 24, par. 2-3-5). The Village of Lakemoor and certain property owners in the proposed area of incorporation sought to intervene with objections to the incorporation. Lakemoor was not allowed to intervene; however, respondents David John Lorenz (objectors) *630 and others were allowed to file their objections. After a hearing on the petition, the trial court determined that the area was not contiguous and therefore was not a village in fact. (Ill.Rev.Stat.1989, ch. 24, par. 2-3-6.) Petitioners appealed and raise the issue whether the finding that the area was not contiguous is against the manifest weight of the evidence. Objectors filed a cross-appeal, claiming the trial court used the wrong census to determine the population of McHenry County.
Petitioners filed a certified copy of the resolution of the Lake County Board relating to the proposed incorporation of Volo. Pursuant to section 2-3-18 of the Municipal Code, the resolution provided that the proposed incorporation was compatible with the official plan for development of Lake County and that the lands to be embraced in Volo constituted a sufficient tax base to insure the ability of Volo to provide all necessary municipal services to its inhabitants. Ill.Rev.Stat.1989, ch. 24, par. 2-3-18.
On January 28, 1991, a hearing was held on the petition to incorporate. The parties made the following stipulations: (1) The petition was signed by more than 35 electors who resided within the territory proposed for incorporation; (2) the signatures on the petition were genuine; (3) the territory proposed for incorporation was in Lake County; (4) Lake County had a population in excess of 150,000; (5) there had been no special census for McHenry County since 1980; (6) there had been special censuses for the Cities of McHenry and Woodstock and the Villages of Crystal Lake and Cary, all located in McHenry County; (7) none of the territory sought to be incorporated was within the corporate limits of any other municipality; (8) the territory to be incorporated was owned by at least 30 different owners; (9) all of the territory to be incorporated was situated within 10 miles of McHenry County; (10) the name "Volo" had not been adopted by any other municipality; and (11) the Lake County Board passed a resolution pursuant to section 2-3-18 of the Municipal Code, finding that the incorporation conformed with the comprehensive plan of Lake County and that there was a sufficient tax base to support the village.
Under section 2-3-5 of the Municipal Code, any contiguous territory in a county of 150,000 or more population may be incorporated under that section if any part of the territory is situated within 10 miles of a county with a population of less than 150,000. (Ill.Rev.Stat.1989, ch. 24, par. 2-3-5.) Petitioners filed a motion in limine to preclude the admission of any municipal census and estimate of population as purported proof of the population of McHenry County. The motion provided a memorandum from the United States Department of Commerce, Bureau of Census which showed the official population of McHenry County at 147,897. This number was from the 1980 United States Federal census.
During argument on the motion in limine, the trial court took judicial notice of the 1980 Federal census. Objectors sought to show an increase in the McHenry County population from the 1980 Federal census by using special censuses of five municipalities in McHenry County which were conducted since 1980. These censuses showed an increase in population for Cary, McHenry, Crystal Lake, Woodstock and Oakwood Hills (Oakwood Hills was not included in the stipulation). Objectors also sought to use a population total for McHenry County from the 1990 Federal census which results were released about one week prior to the hearing.
Although the documents were not certified, the court took judicial notice of them. It indicated that they were being filed as offers of proof because the court had previously ruled against their admission. Apparently, arguments were already heard on the motion in limine which are not in the record on appeal. However, the trial court noted that an increase in a part of the county did not legally constitute a census for the whole referring to the objectors' argument to supplement the 1980 census with the municipal censuses. The court observed that the document regarding the 1990 census provided that "the population counts set forth here are subject to possible correction for undercount or overcount. *631 The United States Department of Commerce is considering whether to correct these counts and will publish corrected counts, if any, not later than July 15, 1991." Based on this information, the court concluded that the 1990 census was not an official and final census. The court granted petitioners' motion in limine and used the 1980 Federal census as determinative of McHenry County's population.
Objectors also sought to challenge the Lake County Board resolution. They argued that the trial court had to make a separate finding that the proposed incorporation was compatible with the comprehensive plan of Lake County and that there was a sufficient tax base for the proposed village. The court reserved ruling on the matter and allowed objectors to present the testimony of Robert Mosteller. Mosteller was the deputy director of the Lake County Department of Planning, Zoning and Environmental Quality. The court subsequently determined that it was not required to make such findings and struck Mosteller's testimony in its entirety. It was allowed only as an offer of proof.
At the hearing, petitioners presented testimony regarding the number of inhabitants living in dwellings in the territory: 212 people. These people lived in dwellings other than those designed to be mobile. William Doland, a civil engineer and registered land surveyor, prepared the plat of the territory. He testified that the territory to be incorporated equalled 1.6 square miles. (Ill.Rev.Stat.1989, ch. 24, par. 2-3-5.) He explained the scale for exhibit No. 8, an aerial photograph of the territory, was 600 feet for every inch. Doland said the narrowest width of any of the tracts, east to west and north to south, was 350 feet. There was a typographical error in the legal description of the territory according to Doland. However, the court ruled that the error was cured by the plat. A copy of the plat of the proposed incorporation of Volo follows.
*632 
*633 Objectors called Lorenz to testify. He said his stepson had moved from Lorenz' house in the first week of June 1990. Lorenz did not recall anyone coming to his house to take a count of residents.
Following the hearing, the trial court concluded that all the requirements of section 2-3-5 of the Municipal Code were met except one. The court found that the territory was not contiguous as required by section 2-3-5 and therefore was not a village in fact. (Ill.Rev.Stat.1989, ch. 24, pars. 2-3-5, 2-3-6.) The court denied the petition for incorporation in its February 28, 1991, order (file stamped February 13, 1991, by the circuit clerk). The parties filed a timely appeal and cross-appeal.
Petitioners contend in their appeal that the trial court erred in finding that the area to be incorporated was not contiguous. They argue that all the parcels touched and adjoined one another in a reasonably substantial physical sense. (Western National Bank v. Village of Kildeer (1960), 19 Ill.2d 342, 167 N.E.2d 169.) Petitioners claim that there is no point of physical touching between parcels which is less than 350 feet in length or width. The fact the boundaries are irregular is not fatal to incorporation according to petitioners. (People ex rel. Magnuson v. Kramer (1961), 21 Ill.2d 392, 172 N.E.2d 757.) They ask that the judgment of the circuit court be reversed and the cause be remanded to allow the matter of incorporation to be submitted to the electors of the area.
Section 2-3-5 of the Municipal Code (Ill.Rev.Stat.1989, ch. 24, par. 2-3-5) requires an "area of contiguous territory." The word "contiguity" has been found to mean "`in actual contact; touching or adjoining.'" (Village of Kildeer, 19 Ill.2d at 352, 167 N.E.2d 169 quoting Webster's New Collegiate Dictionary 180 (2d ed.); Village of Fox River Valley Gardens v. Lake County Forest Preserve District (1992), 224 Ill.App.3d 919, 931, 166 Ill.Dec. 855, 586 N.E.2d 813.) "Contiguity" has the same meaning under the disconnection statutes, the annexation statutes, and the incorporation statutes. (See People ex rel. Hanrahan v. Village of Wheeling (1976), 42 Ill.App.3d 825, 1 Ill.Dec. 524, 356 N.E.2d 806.) The finding of the trial court as to contiguity will not be disturbed unless it is against the manifest weight of the evidence. In re Annexation to City of Prospect Heights (1982), 107 Ill.App.3d 1045, 63 Ill.Dec. 643, 438 N.E.2d 574.
To be contiguous, the tracts of land in the territory must touch or adjoin one another in a reasonably substantial physical sense. (In re Petition to Annex Certain Territory to the Village of North Barrington (1991), 144 Ill.2d 353, 162 Ill. Dec. 66, 579 N.E.2d 880; Village of Kildeer, 19 Ill.2d at 352, 167 N.E.2d 169, Fox River Valley Gardens, 224 Ill.App.3d at 931, 166 Ill.Dec. 855, 586 N.E.2d 813.) The determination as to the reasonableness of the contiguity must be determined from the facts of each case. (Village of North Barrington, 144 Ill.2d at 366, 162 Ill.Dec. 66, 579 N.E.2d 800.) Point-to-point touching or cornering is generally not sufficient to satisfy the requirement of contiguity. (In re Incorporation of the City of Prospect Heights (1979), 79 Ill.App.3d 378, 34 Ill. Dec. 703, 398 N.E.2d 378.) The use of a narrow "strip" of land to connect a parcel with the rest of the territory has been held not to meet the requirement of contiguity under the statute. (See North Barrington, 144 Ill.2d at 367, 162 Ill.Dec. 66, 579 N.E.2d 800.) A line of demarcation between the reasonableness or unreasonableness of a contiguity must be drawn based on the facts of each case. Village of Kildeer, 19 Ill.2d at 352, 167 N.E.2d 169; Indian Valley Golf Club, Inc. v. Village of Long Grove (1985), 135 Ill.App.3d 543, 549, 89 Ill.Dec. 726, 481 N.E.2d 277.
Extreme irregularity in boundaries is not a fatal defect as compactness is not a requisite in the statute. (North Barrington, 144 Ill.2d at 367-68, 162 Ill.Dec. 66, 579 N.E.2d 800; Village of Kildeer, 19 Ill.2d at 352, 167 N.E.2d 169.) No fixed rule exists regarding how wide a common boundary must be to establish contiguity. (Indian Valley Golf Club, Inc., 135 Ill. App.3d 543, 89 Ill.Dec. 726, 481 N.E.2d 277.) The courts of this State have held that "contiguity" should be given a uniform liberal construction. Village of Kildeer, *634 19 Ill.2d at 351-52, 167 N.E.2d 169, see North Barrington, 144 Ill.2d at 366, 162 Ill.Dec. 66, 579 N.E.2d 880.
In the case at bar, objectors contend that contiguity is not to be applied in a mechanistic manner of measuring borders but the facts of each case must be examined. (Indian Valley Golf Club, Inc., 135 Ill.App.3d at 550, 89 Ill.Dec. 726, 481 N.E.2d 277.) They claim that the territory should be adjacent and parallel to allow for the delivery of services, citing People ex rel. County of St. Clair v. City of Belleville (1981), 84 Ill.2d 1, 48 Ill.Dec. 723, 417 N.E.2d 125. Objectors summarize and rely upon the testimony of Robert Mosteller regarding Volo's ability to provide services. They claim the proposed incorporation is a subterfuge to contain Lakemoor expansion and not to establish a "village in fact." Objectors cite no authority for their suggestion that incorporation as a separate Village of Volo rather than as part of Lakemoor is a "subterfuge" which should defeat incorporation.
Objectors first agree that compactness is not required but then argue that compactness, community and services are factors to be considered in contiguity. They argue that Volo does not meet those considerations. They incorrectly state that petitioners relied upon People ex rel. Village of South Barrington v. Village of Hoffman Estates (1964), 30 Ill.2d 385, 198 N.E.2d 97, as vindicating petitioners' concept of contiguity. Petitioners do not cite or rely upon Village of Hoffman Estates in their initial brief. Then objectors cite to In re Annexation to the Village of Downers Grove (1981), 92 Ill.App.3d 682, 48 Ill.Dec. 261, 416 N.E.2d 292, which they claim explains why Village of Hoffman Estates (30 Ill.2d 385, 198 N.E.2d 97) was reversed. Initially we point out that the appellate court does not reverse decisions of the Illinois Supreme Court. And, Village of Downers Grove only states that Village of Hoffman Estates has been interpreted narrowly by the appellate court and would not be applied in that case due to the facts. Village of Hoffman Estates has not been reversed. Objectors claim that the "reversal" of Village of Hoffman Estates shows that compactness, community and services are important factors in contiguity.
Finally, objectors posit that petitioners rely on case law which shows what the law of contiguity was before 1979. They contend that the Illinois Supreme Court has redefined contiguity through later case law. However, other than citing to City of Belleville (84 Ill.2d 1, 48 Ill.Dec. 723, 417 N.E.2d 125), objectors fail to support their argument with Illinois Supreme Court case law.
We agree with objectors that the reasonableness of the contiguity must be determined by the facts of each case as recently reiterated by the Illinois Supreme Court. (Village of North Barrington, 144 Ill.2d at 366, 162 Ill.Dec. 66, 579 N.E.2d 800.) However, contiguity means "actual contact, touching or adjoining." (Fox River Valley Gardens, 224 Ill.App.3d at 931, 166 Ill.Dec. 855, 586 N.E.2d 813.) The court in Indian Valley Golf Club, Inc. v. Village of Long Grove (1985), 135 Ill. App.3d 543, 89 Ill.Dec. 726, 481 N.E.2d 277, examined case law to find that widths of less than 150 feet were sufficient boundaries to constitute contiguity. The court determined that 150 feet was a substantial physical touching and contiguity existed.
Nor did the City of Belleville redefine or change the law with respect to contiguity. The supreme court in the City of Belleville was addressing the issue of multiple annexations of parcels at once, some of which were not contiguous to the city unless certain parcels in the annexation were also annexed. It was noted by the court that adjoining in a reasonably substantial physical sense (Village of Kildeer, 19 Ill.2d at 352, 167 N.E.2d 169) allowed for delivery of services conveniently and efficiently. Sewer lines, fire, police, etc. as far as practicable should not have to pass under or over other lands not within municipal boundaries. This concept was not new in City of Belleville. The court in Wild v. People ex rel. Stephens (1907), 227 Ill. 556, 81 N.E. 707, found point-to-point or cornering was not contiguous because no person or vehicle could pass between the parcels without *635 passing outside the village. Wild also found that the use of a 50-foot-wide strip to connect a parcel was a subterfuge. However, no mention was made of the other irregular boundaries in Wild, one of which was 160 feet in width and 2,452 feet in length.
Objectors' reliance on the testimony of Mosteller is improper. The trial court struck the entire testimony and only allowed it as an offer of proof. Objectors have not argued or cited pertinent authority concerning any error in the trial court's ruling, and therefore any error is waived.
It is somewhat confusing to discern objectors' position from their inaccurate discussion of Village of Hoffman Estates (30 Ill.2d 385, 198 N.E.2d 97). The court there applied a unity of purpose and facilities test because the territory to be annexed did not physically adjoin the village. Since the village was already providing significant municipal services to the annexed area, a basis for contiguity other than physical contact or common boundary was appropriate to apply. (Fox River Valley Gardens, 224 Ill.App.3d at 932, 166 Ill.Dec. 855, 586 N.E.2d 813.) Apparently objectors argue that the lack of compactness, lack of community in the traditional sense, and lack of providing services should outweigh any physical contact in determining contiguity in this case.
Village of Hoffman Estates has been narrowly interpreted by the appellate court and is limited to its particular facts. (Village of Downers Grove, 92 Ill.App.3d at 686, 48 Ill.Dec. 261, 416 N.E.2d 292.) Subsequent cases have held that a unity of purpose and facilities is not an additional requirement or exception to the need for a reasonably substantial physical touching, but a factor to consider in the determination of contiguity. (Village of Wheeling, 42 Ill.App.3d 825, 1 Ill.Dec. 524, 356 N.E.2d 806.) Village of Downers Grove concluded that a unity of purpose and facilities is an element of contiguity in an annexation case only. (92 Ill.App.3d at 687, 48 Ill.Dec. 261, 416 N.E.2d 292.) When physical contiguity is present, the principles of Village of Hoffman Estates are not applied. (Fox River Valley Gardens, 224 Ill.App.3d at 932, 166 Ill.Dec. 855, 586 N.E.2d 813.) We have physical contiguity in the instant case.
It is the function of the legislature to prescribe the conditions of incorporation and the obligation of the courts to see that they are met. (Village of Kildeer, 19 Ill.2d at 349, 167 N.E.2d 169.) Courts will not inject provisions not found in the statute however desirable they may be. (Village of Kildeer, 19 Ill.2d at 349-50, 167 N.E.2d 169.) The statute herein requires an area of contiguous territory only. (Ill.Rev.Stat. 1989, ch. 24, par. 2-3-5.) To be contiguous the tracts of land must touch or adjoin one another in a reasonably substantial physical sense. (Village of North Barrington, 144 Ill.2d at 365-66, 162 Ill.Dec. 66, 579 N.E.2d 880.) If the court determines that the tracts are contiguous in this respect and the other requirements of section 2-3-5 of the Municipal Code are met, a "village in fact" exists. (People ex rel. County of Du Page v. Lowe (1967), 36 Ill.2d 372, 380-81, 224 N.E.2d 1.) Long-standing precedent that even extreme irregularity of boundaries does not bar annexation where the land to be annexed consists of contiguous parcels and is contiguous to the municipality was reaffirmed in Village of North Barrington (144 Ill.2d at 367, 162 Ill.Dec. 66, 579 N.E.2d 800). Contrary to objectors' position, contiguity has not been redefined by later case law, e.g., Village of North Barrington (144 Ill.2d 353, 162 Ill. Dec. 66, 579 N.E.2d 800), Fox River Valley Gardens (224 Ill.App.3d 919, 166 Ill.Dec. 855, 586 N.E.2d 813), and People ex rel. Village of Forest View v. Village of Lyons (1991), 218 Ill.App.3d 159, 161 Ill.Dec. 50, 578 N.E.2d 177.
Objectors argue that Volo is not a "village in fact" apparently because of the considerations of services and community. Section 2-3-6 of the Municipal Code requires that the circuit court rule whether an area is a "village in fact." (Ill.Rev.Stat. 1989, ch. 24, par. 2-3-6.) However, the requirement that the court rule on whether the area is a "village in fact" simply means that a hearing is held to determine whether the area sought to be incorporated meets *636 the requirements of section 2-3-5 of the Municipal Code. (People ex rel. County of Du Page, 36 Ill.2d 372, 380-81, 224 N.E.2d 1.) In other words, the court must find an "area of contiguous territory" which does not exceed "2 square miles," etc. Ill.Rev. Stat.1989, ch. 24, par. 2-3-5.
Lastly, objectors rely on People ex rel. Village of Long Grove v. Village of Buffalo Grove (1987), 160 Ill.App.3d 455, 111 Ill.Dec. 965, 513 N.E.2d 408, to support their position. In Village of Buffalo Grove, this court found that contiguity did not exist where the parcel sought to be annexed by Buffalo Grove was entirely surrounded by Long Grove except for a 600-foot common boundary. The common boundary with Buffalo Grove was found insufficient where the parcel was 95 acres in area. Objectors argue that Village of Buffalo Grove is comparative to the instant case because the area to be incorporated as Volo would almost entirely surround Lakemoor.
We note that Village of Buffalo Grove differed from earlier case law by this court wherein it was noted that contiguity was not approached with such comparison between the size and volume of connecting tracts. (In re Annexation of Certain Territory to the Village of Buffalo Grove (1970), 128 Ill.App.2d 261, 266, 261 N.E.2d 746.) The Illinois Supreme Court recently cited with approval and relied upon In re Petition for Annexation of Lands of the Village of Glen Carbon (1970), 130 Ill. App.2d 821, 264 N.E.2d 283. (Village of North Barrington, 144 Ill.2d at 368, 162 Ill.Dec. 66, 579 N.E.2d 880.) In Village of Glen Carbon, the area to be annexed contained about 230 acres and had a common boundary of only 1,312 feet and was found to be contiguous. No comparison of the size of the area to be annexed and the common boundary was made by the supreme court in Village of North Barrington. Thus, more recent case law suggests that Village of Buffalo Grove (160 Ill. App.3d 455, 111 Ill.Dec. 965, 513 N.E.2d 408) may be limited to the facts in that case.
In any event objectors do not rely on Village of Buffalo Grove (160 Ill.App.3d 455, 111 Ill.Dec. 965, 513 N.E.2d 408) for the size-comparison aspect. They rely on the fact that the area to be annexed to Buffalo Grove was almost completely surrounded by Long Grove. However, this factor is inapposite to the case at bar. The area that objectors point to in this case as having only a "small" connection with Lakemoor is already Lakemoor. If the parcel in the center of the area to be incorporated as Volo was not already annexed to Lakemoor and the parcel was to be annexed to Lakemoor, assuming Volo was already incorporated, Village of Buffalo Grove (160 Ill.App.3d 455, 111 Ill.Dec. 965, 513 N.E.2d 408) may be more relevant to that annexation. The fact that the center area is already Lakemoor which causes Volo's proposed boundaries to be extremely irregular does not establish lack of contiguity. (See Kramer, 21 Ill.2d 392, 172 N.E.2d 757; Village of Kildeer, 19 Ill.2d 342, 167 N.E.2d 169.) Objectors have failed to distinguish Kramer and Kildeer.
The evidence in the case at bar established that no parcel was smaller in width or length than 350 feet. There is no point-to-point or cornering of parcels which would defeat contiguity. (Village of North Barrington, 144 Ill.2d at 367-68, 162 Ill. Dec. 66, 579 N.E.2d 800.) Widths of lesser length than 150 feet have been held to be a substantial border. (See Indian Valley Golf Club, Inc., 135 Ill.App.3d 543, 89 Ill. Dec. 726, 481 N.E.2d 277.) There are no narrow strips of land to connect parcels to the rest of the territory which have been held not to meet the requirement of contiguity. (Village of North Barrington, 144 Ill.2d at 367, 162 Ill.Dec. 66, 579 N.E.2d 800, citing Wild, 227 Ill. 556, 81 N.E. 707, (wherein a 50-foot strip was not contiguous); see Village of Lyons, 218 Ill.App.3d 159, 161 Ill.Dec. 50, 578 N.E.2d 177 (wherein parcels nine times longer than wide were "strips" and not contiguous).) After a careful examination of the plat of the village in question in the instant case, we believe it satisfies the requirements of the statute as interpreted. (Village of Kildeer, 19 Ill.2d at 352, 167 N.E.2d 169.) The area embraced is extremely irregular but *637 this fact as found in Kramer (21 Ill.2d 392, 172 N.E.2d 757) and Kildeer (19 Ill.2d 342, 167 N.E.2d 169) is not a fatal defect. (See also Village of North Barrington, 144 Ill.2d at 367, 162 Ill.Dec. 66, 579 N.E.2d 880.) Although there may be problems in the administration of such an irregular territory, such matters are the function of the legislature and not the courts. (Kramer, 21 Ill.2d at 396, 172 N.E.2d 757.) The judgment of the circuit court is against the manifest weight of the evidence and is reversed.
Turning to objectors' cross-appeal, they contend that the trial court erred in using the 1980 Federal census to determine the population of McHenry County. It was stipulated that the area to be incorporated as Volo was within 10 miles of McHenry County. (Ill.Rev.Stat.1989, ch. 24, par. 2-3-5.) The 1980 census showed the population of McHenry County under 150,000 (147,897), which met the requirements of section 2-3-5 of the Municipal Code. Objectors claim that the 1990 census should have been used or that the 1980 census as supplemented with later municipal census should have been used. Either source showed a population in excess of 150,000.
The parties disagree as to whether the census information available at the time of filing for incorporation or at the time of hearing controls. Petitioners cite In re Incorporation of the Village of Capitol Heights (1968), 41 Ill.2d 256, 242 N.E.2d 247, as supportive of their position that time of filing controls. However, Village of Capitol Heights holds that the facts existing at the time of the court hearing are determinative of compliance with the statutory conditions for incorporation. (Village of Capitol Heights, 41 Ill.2d at 258, 242 N.E.2d 247; Wescom, Inc. v. Woodridge Park District (1977), 49 Ill. App.3d 903, 7 Ill.Dec. 560, 364 N.E.2d 721.) Thus, the latest census available at the time of the hearing should be used.
Under section 1-7-2 of the Municipal Code, whenever any provision therein is based on the number of inhabitants that number shall be determined by reference to the "latest census" taken by the authority of the United States, Illinois, or the municipality. (Ill.Rev.Stat.1989, ch. 24, par. 1-7-2.) When such statutes do not prescribe by what method population is to be determined, it has been held that the proper basis is the official Federal census as provided under an earlier, similar version of section 1-7-2. (Supervisors of the County of Boone v. Village of Rainbow Gardens (1958), 14 Ill.2d 504, 509, 153 N.E.2d 16.) Federal figures are conclusive and may not be contradicted by Federal experts testifying as to actual population on a crucial date based upon estimates of the average annual population increase. (Rainbow Gardens, 14 Ill.2d at 510, 153 N.E.2d 16.) Population in such cases is to be determined from an official census. (See Rainbow Gardens, 14 Ill.2d at 510, 153 N.E.2d 16; People v. Walker (1978), 59 Ill.App.3d 192, 16 Ill.Dec. 736, 375 N.E.2d 843, People ex rel. Nicholson v. Board of Trustees of the Police Pension Fund (1935), 281 Ill.App. 394.) In section 2-3-5 of the Municipal Code, the specific and controlling statute herein, the county's population is determined by the "last preceding federal census." (Emphasis added.) Ill.Rev.Stat. 1989, ch. 24, par. 2-3-5.
Objectors claim that the 1990 Federal census for McHenry County was available at the time of hearing. The 1990 census showed a population in excess of 183,000. However, the 1990 Federal census at the time of the hearing was not final. The census specifically provided that the population counts set forth therein were subject to correction and that corrections, if any, would be made by July 15, 1991, about six months after the hearing. The trial court determined that the 1990 census released at that time was not the official census. We agree.
Objectors argue that while an overcount may have been possible, the margin of difference for a correction between 150,000 and 183,000 is too great to be reasonably possible. Objectors do not claim that the 1990 census was official and final. They also claim that the statute refers to "latest census taken" and not "latest census not *638 subject to modification." However, we are not persuaded by their arguments. An official Federal census is required (see Rainbow Gardens, 14 Ill.2d at 510, 153 N.E.2d 16; Coal Creek Drainage & Levee District v. Sanitary District (1929), 336 Ill. 11, 167 N.E. 807), and a census which specifically provides that it is subject to correction at a later time is not final and official. The trial court properly denied use of the 1990 census.
Next, objectors claim that the 1980 census had been updated through special Federal census of five municipalities in McHenry County. They claim that special Federal censuses can be used as conclusive evidence of population. (Rainbow Gardens, 14 Ill.2d at 511, 153 N.E.2d 16.) An increase of over 9,000 people is reflected in those five municipalities which places the 1980 census population of McHenry County of 147,897, over 150,000 according to objectors. Objectors also rely on an official estimate from Current Population Reports which showed 1988 estimates for McHenry County at 171,000.
Objectors incorrectly state that petitioners maintain that only the decennial Federal census may be used. They argue that section 1-7-2 of the Municipal Code does not require use of only a decennial census. Petitioners do not contend that only a decennial census may be used. The statute clearly provides that only the "latest" Federal, State or municipal census be used (Ill.Rev.Stat.1989, ch. 24, par. 1-7-2), or the "last preceding federal census" (Ill.Rev. Stat.1989, ch. 24, par. 2-3-5). Special Federal censuses may be used to determine population. Rainbow Gardens, 14 Ill.2d at 511, 153 N.E.2d 16.
The problem with objectors' argument is that the special Federal censuses are of five municipalities in McHenry County and none are special Federal censuses of McHenry County itself. Rainbow Gardens allowed use of a special Federal census; however, the special Federal census was done for Rainbow Gardens, the population of which was in issue in that case. Section 1-7-2 is a general provision for the proper method of determining the population where a provision is based on the number of inhabitants. (Ill.Rev.Stat.1989, ch. 24, par. 1-7-2.) To incorporate as a village under section 2-3-5 of the Municipal Code, the number of inhabitants of the county within 10 miles of the area must be less than 150,000. (Ill.Rev.Stat.1989, ch. 24, par. 2-3-5.) The plain meaning of section 2-3-5 requires a determination of the county's population. Special Federal censuses of five municipalities in the county added to the 1980 county population do not meet the statutory requirement.
As petitioners pointed out and which objectors did not reply to, population increases in these five locations did not conclusively establish an increase in the county population. The increases could have resulted from annexations or intracounty movement of residents. Also, objectors' position would require an assumption that no other municipality or area in McHenry County lost population. The trial court properly excluded consideration of these five censuses with the 1980 census to assume an increase in McHenry County exceeding 150,000. While objectors urge a "commonsense" approach that these showed an increase in McHenry County, the terms of the statute control.
It was also proper to exclude consideration of the Current Population Reports regarding 1988 estimates of population. Estimates are not included in the statutes as determinative of population (Ill. Rev.Stat.1989, ch. 24, pars. 1-7-2, 2-3-5) and cannot be used to contradict Federal census figures (Rainbow Gardens, 14 Ill.2d at 510, 153 N.E.2d 16).
Based on the foregoing, the judgment of the circuit court of Lake County is reversed, and the matter is remanded for the trial court to enter an order finding a village in fact and to comply with the provisions of section 2-3-6 of the Municipal Code (Ill.Rev.Stat.1989, ch. 24, par. 2-3-6).
Reversed and remanded with directions.
UNVERZAGT and DUNN, JJ., concur.