*In re* INCORPORATION OF A VILLAGE TO BE KNOWN AS THE VILLAGE OF MITCHELL (Petitioners for Incorporation, Petitioners-Appellants; The Village of Pontoon Beach *et al.*, Objectors-Appellees and Cross-Appellants; Union Electric Development Company *et al.*, Objectors-Appellees).

Fifth District   No. 5—99—0233

Opinion filed September 13, 2000.

James S. Sinclair, of Stobbs & Sinclair, Ltd., of Alton, for appellants.

Keith A. Jensen, of Jensen, Spengler & Cooper, of Granite City, for appellees Village of Pontoon Beach and City of Granite City.

David J. Gerber, of Gerber Law Offices, of Edwardsville, for appellee City of Edwardsville.

Myron A. Hanna, of Stolar Partnership, of Belleville, for appellee Union Electric Development Company.

Katherine M. Smith, of Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., of Edwardsville, for appellee Gateway Commerce Center Investment Company, L.L.C.

JUSTICE HOPKINS delivered the opinion of the court:

The petitioners, 697 voters of Madison County (petitioners), appeal the trial court's order dismissing their petition for incorporation as a village. On appeal, petitioners contend that the trial court erred in reducing the population of the proposed Village of Mitchell to below 7,500 because of annexation activities of the City of Edwardsville (Edwardsville) and the City of Granite City (Granite City), thereby requiring the consent of the municipalities located within a mile and a half of the boundary of the proposed Village of Mitchell under statutory law. See 65 ILCS 5/2—3—5a (West 1998). Petitioners contend that the two annexation ordinances were defective and that the trial court erred in not adjusting the boundary lines of the proposed village, to the extent that any of the annexations by Granite City or Edwardsville were valid, to eliminate those territories from the proposed village.

On their cross-appeal, the Village of Pontoon Beach, Edwardsville, and Granite City contend that the trial court erred in not granting their motion for judgment on the petition of incorporation because of jurisdictional defects in the petition and because the petition for incorporation failed to meet statutory requirements in its legal description and boundaries. We affirm.

## FACTS

Petitioners filed a petition for incorporation for the proposed Village of Mitchell on August 20, 1998. Prior to the filing of the petition, Granite City and Edwardsville filed annexation petitions and numerous annexation ordinances. Specifically, Granite City passed 74 annexation ordinances that pertained to land located inside the boundaries of the proposed village. In addition, Edwardsville passed an annexation ordinance pertaining to property owned by Charles and Helen Mueller (the Mueller property). A portion of the Mueller property was included in the boundary of the proposed Village of Mitchell. Union Electric Development Company (Union Electric) filed a petition for annexation with Granite City, and Granite City passed annexation ordinance number 7033 annexing the Union Electric property to the city. Gateway Commerce Center Investment Company, L.L.C. (Gateway), filed a petition for annexation with Edwardsville.

After the petition for incorporation was filed, Pontoon Beach, Granite City, Edwardsville, Union Electric, William and Fannie Jennings, Virgil and Trudy Jennings, and Gateway filed motions to intervene and objections to the petition for incorporation. The objections varied but encompassed the following: that the petition for incorporation is defective in that it did not contain a sufficient legal description; that the area to be incorporated contains less that 7,500 people; that the surrounding municipalities within a mile and a half of the boundaries of the proposed village do not consent to the petition for incorporation; that the area of the proposed village is not contiguous; that the legal description of the proposed village contains property already located within other municipalities; and that the area to be incorporated is in excess of the map approved by the Madison County Land Use Commission. The court granted the motions for leave to intervene.

At the hearing on the petition for incorporation, James Marty testified that he is a licensed professional land surveyor and engineer. Marty prepared the map for the petitioners' petition for incorporation. He stated that the area included in the proposed Village of Mitchell is 7.28 square miles and that the estimated population of the proposed village, based upon 1990 federal census figures, is 8,039 people. Marty did not consider any of the annexation ordinances of Granite City or Edwardsville in his tally of the population for the area. However, Marty stated that if Edwardsville's annexation ordinance for the Mueller property is valid, then the population of the area commonly known as Poag, which is affected by the Mueller annexation, is 305 people. Marty did not believe that the population of the proposed village should be reduced by this amount, as the Poag area is still connected

to the Mitchell area by a railroad right-of-way that is approximately 126 feet wide and 1,600 feet long.

Marty acknowledged that the population reduction for the Village of Mitchell would be 370 if the Lindsay annexation by Granite City was considered valid. Similarly, if the Granite City annexation ordinances were considered valid, then the annexation ordinances not associated with the Maryville Road annexation ordinance would reduce the population of the proposed village by 113 people. Lastly, Marty stated that if the Union Electric property was validly annexed, the population of the proposed village would be reduced by 97 people.

The evidence deposition of Joseph M. Juneau was introduced into evidence. Juneau testified that his calculation of the population of the proposed village, based on 1990 federal census figures, is 7,980. Juneau considered the completed and pending annexations to Edwardsville and Granite City and made five adjustments to the proposed village's population. The first adjustment was based upon the Mueller-property annexation. Juneau reduced the proposed village's population because the Mueller-property annexation severed the Poag area from the Mitchell area, making the Poag area noncontiguous to the Mitchell area. The population of the Poag area reduced the proposed village population by 305 people. The second adjustment made by Juneau was based upon the Lindsay-property annexation. Again, the Lindsay-property annexation completely severed the southeast portion of the proposed village, making that area noncontiguous. According to Juneau, the Lindsay-property annexation reduced the proposed village's population by 479 people. Juneau's third adjustment to the population was based upon the annexations by Granite City on August 18, 1998, as these annexations were completed before the petition for incorporation was filed. The annexations by Granite City, including the Maryville Road annexation and the annexations associated with Maryville Road, reduced the population for the proposed village by 192 people. The fourth adjustment, based upon Union Electric's preannexation agreement with Granite City and the proposed annexation of the Jennings's property, would reduce the proposed village's population by 97 people. Juneau's last adjustment was based upon a number of preannexation agreements filed with Granite City; however, the properties involved were not contiguous with Granite City, so he did not reduce the population for the proposed village because of these adjustments. If these preannexation agreements are considered, the population of those areas is 255. By Juneau's calculations, he determined that the total population of the proposed village after the adjustments is 6,653.

The trial court determined in its written order of January 28,

1999, that the Granite City annexation petitions were filed prior to the incorporation petition and take priority over the incorporation petition. The court held that Granite City's annexation ordinances were effective and that the Granite City and Edwardsville ordinances reduced the population of the proposed Village of Mitchell to 7,251. The court further held that since the population of the proposed village is below 7,500, the statutory requirements of section 2—3—5a of the Illinois Municipal Code (65 ILCS 5/2—3—5a(a) (West 1998)) were not met. The court also determined that the boundary of the proposed village was inaccurately described and platted because the properties annexed by the cities of Granite City and Edwardsville were not reflected in the plat map for the proposed village. Therefore, the trial court denied the petition for incorporation, found the petition for incorporation to be invalid, and dismissed the petition for incorporation with prejudice. Petitioners filed a timely appeal, and the municipalities cross-appeal.

## ANALYSIS

Petitioners contend that the trial court erred in dismissing the petition for incorporation. Petitioners claim that the court should not have reduced the population and should not have found that the boundary of the proposed Village of Mitchell was inaccurate due to Granite City's and Edwardsville's annexation ordinances. Under this issue, petitioners present five subissues: (1) that the Granite City annexation ordinances, passed on August 18, 1998, two days before the petition of incorporation was filed, were ineffective and should not have been considered by the trial court; (2) that the court should not have deleted the population of the Poag area because the railroad right-of-way made the Poag area and the Mitchell area contiguous; (3) that Granite City's annexation ordinance concerning Maryville Road was invalid; (4) that various Granite City preannexation agreements should not reduce the population; and (5) that the annexation petitions filed by Union Electric and Gateway were abandoned and the court should not have considered that the areas covered by these two petitions for annexation changed the boundary of the proposed Village of Mitchell.

■ Case law has established that on the issue of the priority between competing annexation or incorporation proceedings, jurisdictional priority is established by whichever petition is initiated or filed first. See *In re Petition to Annex Certain Property to the City of Wood Dale*, 244 Ill. App. 3d 820 (1993); *People ex rel. Village of Long Grove v. Village of Buffalo Grove*, 160 Ill. App. 3d 455 (1987). Jurisdictional priority between an annexation petition and a petition for incorpora-

tion does not depend on the validity or the correctness of the petitions. See *In re Petition to Annex Certain Property to City of Wood Dale*, 244 Ill. App. 3d at 827. A later petition filed during the pendency of an earlier petition does not lawfully come into being while the earlier petition remains pending and unresolved. See *In re Petition to Annex Certain Property to City of Wood Dale*, 244 Ill. App. 3d at 828.

■ A petition for annexation or for incorporation must allege facts that bring it within the statute. See *In re Petition to Annex Certain Property to City of Wood Dale*, 244 Ill. App. 3d at 834. Because a petition is a pleading, it must conform to the statute and show all the facts necessary to state a legally recognized cause of action; otherwise, the petition will be dismissed. See *In re Petition to Annex Certain Property to City of Wood Dale*, 244 Ill. App. 3d at 834. In dismissing a petition for incorporation, the pleadings are strictly construed against the pleader. See *In re Petition to Annex Certain Property to City of Wood Dale*, 244 Ill. App. 3d at 834-35. Because the dismissal of a petition of incorporation is essentially a ruling on a motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)), our review of the petition's dismissal is *de novo*. See *In re Petition for Submittal of the Question of Annexation to the Corporate Authorities of the City of Joliet*, 282 Ill. App. 3d 684 (1996).

■ Under section 2—3—5a(a) of the Illinois Municipal Code, petitioners must allege in a petition to incorporate that the area to be incorporated is contiguous, contains at least four square miles, and has 2,500 inhabitants residing in permanent dwellings. 65 ILCS 5/2—3—5a(a) (West 1998). Further, the petition must allege whether the proposed area for incorporation contains more or less than 7,500 residents. See 65 ILCS 5/2—3—5a(a) (West 1998). If the proposed area of incorporation contains less than 7,500 residents and the area is within a mile and a half of the limits of any existing municipality, then the petitioners must obtain the consent of the municipality before the area is allowed to be incorporated. See 65 ILCS 5/2—3—5a(a) (West 1998). The failure to comply with the consent provision of the statute is a legal defect that will defeat a petition for incorporation of a village. See *In re Proposed Incorporation of the Village of Frankfort Square, Will County*, 166 Ill. App. 3d 146 (1988).

■ Here, petitioners' assertion that Granite City's 74 annexation ordinances were ineffective because they were not published is irrelevant. The validity and correctness of the ordinances or their initiating petitions for annexation do not matter. What is crucial is when the petitions for annexation to Granite City were filed. The record in this case is silent as to when the petitions for annexation to Granite City were filed or initiated; however, since the ordinances were passed by

the city council of Granite City on August 18, 1998, two days before the petition for incorporation for the Village of Mitchell was filed in the circuit court, the petitions for annexation were filed prior to the petition for incorporation. Because the Granite City petitions for annexation were filed before the petition for incorporation, the petition for incorporation did not have jurisdictional priority and the territory covered by the petitions for annexation cannot be considered in the population base for the proposed village. At trial, the population involved in the 74 annexation ordinances was asserted to be 113 people. Therefore, the proposed village's population was properly reduced by the trial court for this amount.

■ The statute governing the incorporation of a village also requires that the incorporated area be contiguous. See 65 ILCS 5/2—3—5a(a) (West 1998); see also *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d 321 (1992). " 'Contiguity' has the same meaning under the disconnection statutes, the annexation statutes, and the incorporation statutes. [Citation.]" *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 327. Contiguity means an actual touching or adjoining of property in a reasonably substantial physical sense. See *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 327. Contiguity is determined from the facts of each case; however, point-to-point touching or cornering is not sufficient to satisfy the requirement of contiguity. See *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 328. Similarly, a narrow "strip" of land used to connect a parcel with the rest of the territory is also not sufficient to meet the requirement of contiguity. See *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 328. There is no fixed rule as to how wide a common boundary must be to establish contiguity, and courts have adopted a liberal construction of the contiguity requirement. See *In re Petition for Annexation of Certain Property to the Village of Plainfield*, 267 Ill. App. 3d 313 (1994); *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 328. A trial court's determination as to contiguity will not be overturned on review unless it is against the manifest weight of the evidence. See *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 327.

■ Here, implicit in the trial court's ruling is that the areas of the proposed Village of Mitchell that were severed by annexation ordinances were no longer contiguous to the proposed village. Granite City's annexation ordinance concerning the Lindsay property completely severed the southeast portion of the proposed Village of Mitchell from the proposed village, so there was no contiguity for that area. The lack of contiguity for the southeast corner of the proposed

village required the court to further reduce the population for the proposed village by 370 people. The court's finding that the population was reduced by the area severed from the proposed village was not against the manifest weight of the evidence.

Similarly, the trial court reduced the proposed village's population due to Edwardsville's annexation of the Mueller property. Petitioners do not question the annexation ordinance but only contend that the annexation of the Mueller property did not destroy the contiguity of the Poag area with the rest of the proposed village. Petitioners assert that because there is a 126-foot-wide by 1,600-foot-long strip of land, consisting of a railroad right-of-way connecting the Poag area with the Mitchell area, the Poag area is contiguous.

As stated earlier, "strip" annexations have been found to be insufficient to meet the contiguity requirements under the annexation statute. See 65 ILCS 5/7—1—1 (West 1998); *In re Petition to Annex Certain Territory to the Village of North Barrington*, 144 Ill. 2d 353 (1991). "The purpose of requiring contiguity is to permit the natural and gradual extension of municipal boundaries to areas which adjoin one another in a reasonably substantial physical sense." *In re Petition for Annexation of Certain Property to the Village of Plainfield*, 267 Ill. App. 3d 313, 318 (1994). The contiguity of an area assures that the delivery of services is convenient for the city and efficient for its citizens, so that, as a practical matter, sewer, fire, police, and other services should not have to pass over or under lands not within municipal boundaries. See *In re Petition for Annexation of Certain Property to the Village of Plainfield*, 267 Ill. App. 3d at 318-19.

Here, after the Mueller property was annexed by the City of Edwardsville, the Poag area was only connected to the Mitchell area by a 126-foot-wide and a 1,600-foot-long strip of land that is a railroad right-of-way. Thus, the connecting ends of the strip of land made only a 126-foot common border, a very negligible common boundary. Further, the railroad right-of-way provides no access for the proposed village to provide services to the Poag area without going over or under the municipal boundary of Edwardsville. Because this strip area does not meet the requirements for contiguity, the Poag area could not be included in the proposed area of the Village of Mitchell. The court's reduction of the population of the proposed village by 305 people, the population of the Poag area, is not against the manifest weight of the evidence.

Petitioners present other issues that concern the boundary of the proposed village and the validity of one of Granite City's annexation ordinances. However, after reducing the proposed village's population by the foregoing amounts (113 for Granite City's August 18, 1998, an-

nexations, 370 for the area disconnected by annexation of the Lindsay property, and 305 for the Poag area disconnected by the annexation of the Mueller property), the population for the proposed Village of Mitchell is 7,251 people, below 7,500. Because the population for the proposed village is under 7,500, the statute requires that the proposed village obtain the consent of the existing municipalities within a mile and a half of the village's proposed boundary. Here, the existing municipalities within a mile-and-a-half of the proposed Village of Mitchell are Granite City, Edwardsville, Pontoon Beach, Roxana, and Hartford. From the pleadings filed by the objectors, it is clear that Granite City, Edwardsville, and Pontoon Beach do not consent to the incorporation of the proposed village. Thus, the petition for incorporation is legally defective for not meeting the consent requirement of the statute. The trial court was correct in dismissing the petition for incorporation.

Because we affirm the trial court's reduction of the population of the proposed village and thereby affirm the dismissal of the petition for incorporation, we need not address the remaining issues presented by petitioners on appeal or by the objectors on cross-appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Madison County dismissing the petition for incorporation of the proposed Village of Mitchell is affirmed.

Affirmed.

KUEHN and MAAG, JJ., concur.