(No. 53274.—

THE PEOPLE *ex rel.* THE COUNTY OF ST. CLAIR *et al.,*
Appellant, v. THE CITY OF BELLEVILLE, Appellee.

*Opinion filed February 3, 1981.*

GOLDENHERSH, C.J., and SIMON, J., took no part.

MR. JUSTICE CLARK delivered the opinion of the court:

This is a *quo warranto* action brought by the People, upon the relation of the County of St. Clair, a township, a road district, and two fire-protection districts, to determine the validity of four annexation ordinances adopted by the city council of the defendant, the city of Belleville. After a bench trial, the circuit court of St. Clair county held the ordinances were valid. The appellate court affirmed (81 Ill. App. 3d 379), and we granted leave to appeal. 73 Ill. 2d R. 315.

A complete statement of facts appears in the appellate court opinion. (81 Ill. App. 3d 379.) A brief summary will suffice here.

A petition for annexation of territory was filed with the city clerk on September 16, 1976, by the Illinois Central Gulf Railroad Company. The next day a copy of a proposed annexation agreement between the city and the Catholic Diocese, owner of a 90-acre parcel, was filed. Members of the Schaumleffel family filed a second petition on September 20, 1976. A petition for annexation of the diocese property was filed on September 30, 1976.

The four ordinances were adopted by the city council on October 7, 1976, and approved by the mayor the next day. The first ordinance, No. 3390, purported to annex the Illinois Central Railroad right-of-way which adjoins the south border of the city of Belleville for 1,350 feet, according to the plaintiff, and 1,158 feet according to the defendant. The annexed portion of the right-of-way which projects beyond the city's border continues in a northwesterly direction for roughly 1,800 feet beyond the southwesterly border of the city, but still parallel to that border, until it reaches South 74th Street, a north-south street.

The second ordinance, No. 3391, was designed to annex a small piece of property referred to as the Schaumleffel property. This property lies between the railroad right-of-way and Illinois State Route 13. It is 25 feet wide and extends from a line parallel to the west boundary of the city limits but 100 feet south of the limits, nearly to South 74th Street. The third ordinance, No. 3392, adopted the annexation agreement between the city and the Catholic Diocese of Belleville, as owner of three tracts totaling 90 acres. It is the annexation of this property which was the subject of the fourth ordinance, No. 3393. The following map, though not drawn to scale, is instructive:

S. 74th Street

Wrong should be 112

2 75'

← Belleville City Limits

approx. 1500' (1705')

Illinois Central Railroad    100'    237.5'

Illinois State Highway 13    237'

1350' [1158']

Catholic Diocese 90 acre parcel (desired to be annexed)

Schaumleffel property (approx. 25' wide)

TRACT NO. 1

N

TRACT No. 2.

TRACT No. 3

OAK MANOR SUBDIVISION

U. S. ROUTE No. 460

With the annexation of the Schaumleffel property, the portion of Highway 13 adjacent to it was annexed by operation of law. Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1.

At trial, two expert witnesses testified. Richard E. Weinel, a registered land surveyor and engineer, testified that in his opinion the city's map of the annexed territory is inaccurate in several places. The city's witness, John Thompson, also a registered engineer and surveyor, agreed that there are errors in the map, but he stated that he was not hired to survey the property, only to draw a map from existing legal descriptions.

The People contend that the annexation ordinances are invalid because: notice was not given to two fire-protection-district trustees; the city's map is inaccurate; the territory annexed is not contiguous to the city of Belleville; and the territories were not contiguous at the time the petitions for annexation were filed with the city clerk.

We agree with the People that the notice given was insufficient. Section 7—1—1 of the Illinois Municipal Code provides in part:

> "Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality, may be annexed thereto as provided in this Article.
>
> When any land proposed to be annexed is part of any Fire Protection District or of any Public Library District, and the annexing municipality provides fire protection or a public library, as the case may be, the Trustees of each District shall be notified in writing by certified or registered mail or by personal service, before any court hearing or other action is taken for annexation. Such notice shall be served 10 days in advance. An affidavit that service of notice has been had as provided by this Section must be filed with the clerk of the court in which such annexation proceedings are pending or will be instituted or, when no court proceedings are involved, with the recorder of deeds for the county where such land is situated. No annexation of such land is effective as to territory within any Fire Protection District or Public Library District unless service

is had and the affidavit filed as provided in this section."
Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1.

In this case, the record is unclear, but it appears that the city clerk attempted to serve notices to the three trustees of both the Signal Hill Fire Protection District and the Villa Hills Fire Protection District, which served the areas sought to be annexed. One trustee of each district, however, had been replaced. The notices were delivered to the former trustees, rather than the two new trustees. The trial and appellate courts decided that the notice which was given was valid nonetheless since two of the three trustees of each district were properly served, thereby protecting the interest of the districts. We disagree.

It is true, as the appellate court pointed out, that the failure to serve notice upon two trustees appears to have been inadvertent, and was a "formal defect," but the statute does not make an exception for such a failure. The fact remains that two of the six trustees who were entitled to notice did not receive any. The intent of the statute is that all trustees be notified in writing so that they might express objections or otherwise represent the interest of the district. Were we to excuse this requirement in this case, a situation would be created where, in the future, a trustee whose disapproval of an annexation petition was known could be silenced simply by serving the other trustees, but not him. (See *In re Annexation to Village of Green Oaks* (1978), 58 Ill. App. 3d 842, 845.) Service upon a majority of trustees is not the same as service upon "the Trustees" (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1). Thus, the mandatory statutory requirement was not met.

Secondly, the notices which the other trustees did receive stated merely that the city was about to annex certain described territory, "and that such annexation will take place not less than 10 days after the service of this notice upon you." The statute provides that the trustees of each district shall be notified in writing "before any

court hearing or other action is taken for annexation. Such notice shall be served 10 days in advance." (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1.) The notice in this case did not inform the trustees of either a court hearing or of the actual fact that a city council meeting was to be held on October 7, 1976. Since the notice did not actually inform the trustees of some action which was to be taken, it was not meaningful notice and did not comply with the statute. Therefore, the annexation of land within the two fire-protection districts was not effective. See Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1.

Additionally, both witnesses at trial testified that the map was inaccurate in several respects. Section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8) requires that "[a] copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder of deeds and filed with the County Clerk within the county wherever the annexed territory is located." In *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 66, it was stated: "Descriptions of municipal boundaries [in incorporating petitions] are not construed with the same strictness as those contained in deeds and contracts [citation], and if the incorporating petition and accompanying map, when viewed together, fairly apprise the public of the property involved, the description will be considered proper. [Citation.]" In this case, involving annexation petitions, the inaccuracies are serious enough so that the public and the affected property owners are not fairly apprised as to what territory is to be annexed.

The testimony and the exhibits produced at trial show that the map is inaccurate concerning the western border of Oak Manor subdivision. The actual border and the border shown in the city's map are inconsistent in several places, so that the city's map depicts the annexation of portions of the Oak Manor subdivision, whereas in other

places portions of the Catholic Diocese property are shown as a part of the subdivision.

Also, the city's map does not reflect a widening of Illinois State Route 13 which occurred. The map recites that the width of the route is 439.7 feet, when it is actually 470 feet.

Moreover, Weinel testified that although the city's map states that it is drawn to a scale where one inch equals 200 feet, the map is not drawn to that scale.

Finally, Thompson, the city's witness, testified that the disparity between the map's depiction of the Oak Manor subdivision boundary line, on the one hand, and the legal description of the boundary contained in the diocese's petition for annexation and ordinance No. 3393, on the other, creates an ambiguity. We conclude therefore that when the annexation petition and the city's map are viewed together there are inaccuracies to the point where the public is not fairly apprised of the property which is involved.

We do not mean to imply by our conclusion that an annexation map must be perfectly accurate or that a city must order and pay for a new survey every time it wishes to annex new property. Our conclusion is simply that where, as here, updated, accurate descriptions are known, a city must, as nearly as possible, draw an accurate map so that confusion and uncertainty do not result from recorded maps, deeds, and ordinances which depict inconsistent boundary lines.

The People's next contention is that three of the annexation ordinances are invalid because three portions of the territory sought to be annexed were not contiguous at the time the petitions were filed. The People argue that section 7—1—8 requires that territory be contiguous prior to or at the time the petitions are filed before a municipality may pass annexation ordinances. The city argues that while section 7—1—3 may require that the territory be

contiguous when the petitions are filed, section 7—1—8, the section applicable herein, requires that the territory need not be contiguous until the ordinance is passed. The pertinent part of section 7—1—8 provides:

> "Sec. 7—1—8. Any territory which is not within the corporate limits of any municipality but which is contiguous to a municipality and which territory has no electors residing therein, or any such territory with electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory, and by at least 51% of the electors residing therein shall be filed with the municipal clerk." (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8.)

Section 7—1—3 states:

> "After the filing of the petition but not less than 5 days prior to the date fixed for the hearing, any interested person may file with the circuit clerk his objections (1) that the territory described in the petition or ordinance, as the case may be, is not contiguous to the annexing municipality ***." (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—3.)

We think it is clear from the express language of each section that property must be contiguous at the time the petition is filed. Section 7—1—8 states, using the present tense, that only property which is contiguous contemporaneous with the filing of the petition may be annexed.

We realize that this construction requires a municipality desirous of annexing several parcels, only one of which is contiguous to the municipality, to annex each parcel at separate times. In some situations this requirement may appear cumbersome. We can only conclude that the General Assembly has imposed this limitation to prevent a municipality from conducting a wholesale annexation of successive parcels of property where each parcel, other than the first, is not contiguous to, and is more remote from, the original corporate limits. Since this is peculiarly a legislative judgment, we will not interfere with it.

The purpose of the contiguity requirement is to permit the natural and gradual extension of municipal boundaries to areas which "adjoin one another in a reasonably substantial physical sense" *(Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 352). In that way, the delivery of services is more convenient for the city and more efficient for its citizens. Sewer lines, and fire, police and other services, as far as practicable, should not have to pass under or over lands not within municipal boundaries. (See *Wild v. People ex rel. Stephens* (1907), 227 Ill. 556, 560.) To permit the wholesale annexation of a number of parcels which stretch far beyond the original corporate limits would defeat the purpose of the requirement. Therefore, we conclude that section 7—1—8 (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—8), the statute the city acted under in attempting to annex the territory involved herein, requires that the territory sought to be annexed must be contiguous at the time the petition for annexation is filed. (Contra, *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 282.) Thus ordinances 3391 and 3393, attempting to annex the noncontiguous Schaumleffel property and the Catholic Diocese property were invalidly adopted. Ordinance No. 3392, which adopted the agreement between the city and the diocese, is not affected by this conclusion. Since that ordinance simply adopts the agreement between the city and the diocese, but does not purport to annex any property, we think its validity is not in serious question here. The remaining question is whether the territory included in ordinance No. 3390, which purported to annex the railroad right-of-way, is contiguous to the city. The people argue it is not because it entails the taking of a "strip" of land, a practice which has been repeatedly condemned by the courts of this State in condemnation and annexation proceedings and has never been permitted by the General Assembly. (See *City of Mount Carmel v.*

*Partee* (1979), 74 Ill. 2d 371, 376-77 (condemnation proceeding); *Spaulding School District No. 58 v. City of Waukegan* (1960), 18 Ill. 2d 526, 529; *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 601; *Village of Morgan Park v. City of Chicago* (1912), 255 Ill. 190, 192-93; *Wild v. People ex rel. Stephens* (1907), 227 Ill. 556, 560-61.) Generally, as applied to streets or roadways which project beyond the limits of a municipality, "contiguous" has been interpreted as "adjacent to and parallel to the existing municipal limits and cannot, under any circumstances, permit a municipality by annexation ordinances to grab a whole maze of roadways, circumscribing and choking off unincorporated areas and causing them to be completely surrounded by a maze of roadways annexed to a municipality." (*People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 601; 2 E. McQuillin, Municipal Corporations sec. 7.20, at 359 (3d ed. 1979).) Also, to be contiguous, the territory to be annexed must have a substantial common boundary with the annexing municipality. *Spaulding School District No. 58 v. City of Waukegan* (1960), 18 Ill. 2d 526, 529.

In the instant case, as the appellate court pointed out, the railroad right-of-way has a common boundary with the city for a distance of 1,158 feet, according to the city, and 1,350 feet according to the plaintiff. The right-of-way projects beyond the city's limits for several hundred feet, making the entire length of the right-of-way 1,800 feet. The right-of-way is both adjacent to the city for a considerable, though disputed distance, and parallel to the city's limits. We agree, therefore, with the appellate court that the railroad right-of-way, the subject of ordinance No. 3390, is contiguous to the city of Belleville. Since, however, we have held that the notice and accuracy requirements of sections 7—1—1 and 7—1—8 have not been met by the city, ordinance No. 3390, as adopted in

October 1976, is invalid.

Accordingly, for the reasons stated, the judgments of the circuit and appellate courts are reversed insofar as they upheld the validity of ordinances 3390, 3391, and 3393. Since ordinance No. 3392 does not violate any statute, those portions of the circuit and appellate court judgments that upheld this ordinance are affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part.*

GOLDENHERSH, C.J., and SIMON, J., took no part in the consideration or decision of this case.