*In re* ANNEXATION OF CERTAIN TERRITORY TO THE VILLAGE OF CHATHAM, ILLINOIS (Janice Logan *et al.*, Petitioners-Appellants and Cross-Appellees, v. Eleanor Frank *et al.*, Respondents-Appellees and Cross-Appellants).

Fourth District   No. 4—92—0490

Argued April 14, 1993.—Opinion filed June 3, 1993.

John M. Myers (argued), of Long, Morris, Myers & Rabin, P.C., of Springfield, for appellants.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Stephen A. Tagge (argued) and John A. Kauerauf, of counsel), for appellees Frank.

Daniel C. Lanterman (argued), of Gramlich Law Offices, P.C., of Springfield, for Rural Electric Convenience Cooperative Company, Inc.

James K. Zerkle and Douglas T. Wilcox, Corporation Counsel, of Springfield, for City of Springfield.

Beth Anne Janicki, of Illinois Municipal League, of Springfield, for *amicus curiae*.

JUSTICE GREEN delivered the opinion of the court:

This case concerns a proceeding brought to annex certain unincorporated territory to the Village of Chatham (Chatham) pursuant to article 7, division 1, of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1991, ch. 24, pars. 7—1—1 through 7—1—48). Section 7—1—1 of the Code requires that for territory to become annexed to a municipality that territory must be "contiguous" thereto. (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—1.) We uphold a circuit court decision that the property for which annexation was sought does not meet that requirement.

The petition for annexation in this case was filed in the circuit court of Sangamon County on October 25, 1991, by Janice Logan and others proceeding pursuant to section 7—1—2 of the Code (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—2). Separate objections to that petition were filed pursuant to section 7—1—3 of the Code (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—3) on November 15, 1991, by (1) Eleanor Frank and a group of other persons owning land in the territory (Frank objectors); and (2) Rural Electric Convenience Cooperative Company, Inc. (RECC), provider of electric service to the

area. On December 14, 1991, the court permitted the City of Springfield to intervene on behalf of the objectors.

After an evidentiary hearing, the circuit court entered an order on May 14, 1992, denying annexation. The court ruled that (1) the territory sought to be annexed did not meet the contiguity requirements of section 7—1—1 of the Code; and (2) petitioners did not meet the requirement of section 7—1—2 of the Code that they constitute a majority of the landowners and voters of the land in the territory. The court considered other objections but deemed the two foregoing issues determinative. The court did indicate that it rejected a contention by the Frank objectors that different annexation procedures than those followed here were required because Chatham was a *de facto* petitioner. Petitioners have appealed and the Frank objectors have cross-appealed the court's rejection of their theory that Chatham was a *de facto* petitioner. We affirm.

The map appended to this opinion sets forth the territory sought to be annexed and the existing boundaries of Chatham. The territory comprises 260 acres. It borders on land annexed to Chatham in 1989 for one-eighth of a mile on the north and for a similar distance on the west. The territory is "U" shaped. The distance on the west is approximately 1 mile and 400 feet. The bottom of the "U" extends for approximately half a mile and the east side of the "U" is approximately 1¼ miles in length. The distance across the top of the "U" is 1 mile and 600 feet. The narrowest portion of the territory is approximately 335 feet. The lake in the middle of the "U" has been annexed to the City of Springfield.

■ Sections 2—2—5 of the Code concerning incorporation of cities and 2—3—5 of the Code concerning incorporation of villages in counties of less than 150,000 people both require that the territory sought to be incorporated be "contiguous." (Ill. Rev. Stat. 1991, ch. 24, pars. 2—2—5, 2—3—5.) The cases we consider in determining whether the contiguity requirement was met here concern both the incorporation of municipalities and the annexation of property to municipalities under section 7—1—1 of the Code and its predecessors.

A significant and often-cited early case with which we begin our consideration of the contiguity requirement is *Wild v. People ex rel. Stephens* (1907), 227 Ill. 556, 81 N.E. 707. There, the supreme court affirmed a judgment of ouster in a *quo warranto* proceeding. The suit contested the propriety of the incorporation of a village where the authorizing legislation required the territory incorporated into the village to be "contiguous." (See Ill. Rev. Stat. 1905, ch. 24, par.

182.) The territory consisted of the nearly square area of an original town together with various strips of land. One, 310 feet in width, extended south from the town area for half a mile. That strip then adjoined, at a corner, a strip of 200 feet in width which extended another half mile south where it intersected with a strip which extended equally east and west for a total distance of 2,060 feet. Other similar strips were involved and the supreme court concluded the strips were "a mere subterfuge and not a compliance with the law." (*Wild*, 227 Ill. at 561, 81 N.E. at 708.) While the strips only cornered other land, the court seemed to also consider the fact that the strips were very long and narrow and indicated that this bore upon the question of contiguity.

In *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 155 N.E.2d 635, the court held that annexation of strips of roadways running in various directions from a municipality was improper. The court stated that "[t]he word 'contiguous,' as used in [the then legislation concerning annexation to municipalities], must be defined in keeping with what was the obvious intention of the legislature." (*Village of Streamwood*, 15 Ill. 2d at 601, 155 N.E.2d at 638.) After *Village of Streamwood*, the supreme court has spoken extensively on the question of contiguity in regard to municipal annexations in *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 167 N.E.2d 169, *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1, 417 N.E.2d 125, and *In re Petition to Annex Certain Territory to the Village of North Barrington* (1991), 144 Ill. 2d 353, 579 N.E.2d 880.

In *Kildeer*, the supreme court affirmed an order of a circuit court refusing to issue a writ of *quo warranto* to test the validity of the incorporation of a village. The court first held that the incorporation was not void by reason of the failure of anyone to file with the recorder of deeds, as required by statute, a transcript of the incorporation proceedings which had taken place in the county court. (Ill. Rev. Stat. 1957, ch. 24, par. 4—5.) The supreme court there examined the petitioners' contention that the territory of the village was not "contiguous" as statutorily required. Ill. Rev. Stat. 1957, ch. 24, par. 3—5.

The *Kildeer* court stated:

"So far as the requirement of contiguity is concerned, we know of no case which purports to announce a comprehensive rule suitable for application in all cases. 'Contiguity' means 'in actual contact; touching or adjoining.' (Webster['s] New

Collegiate Dictionary, 2nd ed. p. 180.) The decision in *Wild* suggests, however, that mere actual contact such as is found when lands 'corner' upon one another is not enough and that something more is required. We agree and hold that in order to be considered contiguous within the meaning of the statute, *the tracts of land in the territory must touch or adjoin one another in a reasonably substantial physical sense.* However, the line of demarcation between the reasonableness and unreasonableness of the contiguity cannot be drawn with precision and must be determined from the facts of each case when viewed in the light of such concept." (Emphasis added.) (*Kildeer*, 19 Ill. 2d at 352, 167 N.E.2d at 174-75.)

The *Kildeer* court then concluded that the irregularly boundaried territory of the village, which was 2.15 miles long and 1.85 miles wide, was sufficiently contiguous between each of its parts to meet statutory requirements.

*City of Belleville* also involved *quo warranto* proceedings, this time contesting the validity of four ordinances concerning annexation of land to a municipality. The circuit court upheld all of the ordinances. On review, the supreme court reversed the decision as to three of the ordinances and affirmed as to the upholding of one of the ordinances. Two of the ordinances were held invalid because the required notice of the annexation proceedings had not been given to fire protection districts whose territory included land annexed. (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—1.) The ordinance which was upheld concerned an agreement to annex but did not purport to annex the property. Thus, no problem of contiguity was involved with that ordinance.

Two of the *City of Belleville* ordinances purporting to annex property were held invalid because the territory involved did not touch any property within the limits of the municipality and depended entirely upon the annexation of property covered by other ordinances before they became "contiguous" to the municipality. The tract covered by the other ordinance which annexed property was a railroad right-of-way which had a common boundary with the municipality for at least 1,158 feet and, thus, was "contiguous" to the municipality. However, this ordinance was one of the two which were invalidated because of the failure to notify fire protection districts.

The *City of Belleville* court stated:

"The purpose of the contiguity requirement is to permit the natural and gradual extension of municipal boundaries to ar-

eas which 'adjoin one another in a reasonably substantial physical sense' (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 352[, 167 N.E.2d 169, 175]). In that way, the delivery of services is more convenient for the city and more efficient for its citizens. Sewer lines, and fire, police and other services, as far as practicable, should not have to pass under or over lands not within municipal boundaries. (See *Wild v. People ex rel. Stephens* (1907), 227 Ill. 556, 560[, 81 N.E. 707, 708].)" *City of Belleville*, 84 Ill. 2d at 12, 417 N.E.2d at 130.

The circuit court here relied heavily on *North Barrington* in making its decision. That case involved a petition to annex 13 lots and portions of two other lots to a village. The owner of lot 1 of those lots objected to the annexation but the supreme court ultimately held that the objection should have been denied. The effect of eliminating lot 1 from the area annexed would have been to destroy the contiguity to the village of the two other lots in the territory for which annexation was sought. The trial and appellate courts had ruled that lot 1 should be eliminated from the territory to be annexed. The appellate court had reasoned that as the three lots were on an appendage to the rest of the territory and a majority of the owners of the land on the appendage did not want to be annexed, the territory should be eliminated. (See *In re Petition to Annex Certain Territory to the Village of North Barrington* (1990), 204 Ill. App. 3d 801, 562 N.E.2d 659.) The supreme court rejected this rule and held that because eliminating lot 1 would destroy the contiguity of other lots in the appendage, lot 1 must be annexed if the territory was to be annexed.

The *North Barrington* opinion also addressed the question of whether the whole annexation sought should be prohibited because the territory sought to be annexed was not contiguous to the village. The opinion repeated the language we have recited from and the rationale set forth in *Wild, Kildeer,* and *City of Belleville*. There, citing *Kildeer* (19 Ill. 2d at 352, 167 N.E.2d at 175), the opinion stated: "[t]he determination as to the reasonableness of the contiguity must be determined from the facts of each case." *North Barrington*, 144 Ill. 2d at 366, 579 N.E.2d at 886.

The *North Barrington* court noted that the territory sought to be annexed had an irregular border but the annexation did "not constitute 'strip' annexation or 'cornering,' which have been found to be improper." (*North Barrington*, 144 Ill. 2d at 368, 579 N.E.2d at 887.) That court concluded:

"In the instant case, the plat of annexation shows that the territory to be annexed touches the Village of North Barrington in a 'reasonably substantial physical sense' and allows for a natural extension of the Village's boundary. The plat is in keeping with the purpose of the contiguity requirement." *North Barrington*, 144 Ill. 2d at 366, 579 N.E.2d at 886.

Most appellate decisions have upheld annexations to municipalities. Most favorable to petitioners is the case of *In re Petition for Annexation of Lands of the Village of Glen Carbon* (1970), 130 Ill. App. 2d 821, 822, 264 N.E.2d 283, 283-84, where the appellate court explained:

"The territory sought to be annexed contains approximately 230 acres and has an extremely irregular boundary. *Its common boundary with the village is 1312 feet* along the eastern portion of the northern line of the village. The property then extends north one mile in an irregular fashion, varying in width from approximately 500 to 2,000 feet, then east approximately 2,000 feet and 800 feet wide, then south approximately 4,000 feet in widths varying from 200 to 800 feet. The general shape of this territory resembles an index finger bent 90 degrees at both of its joints."

The *North Barrington* opinion cited *Glen Carbon* as a case where the irregularity of boundaries did not defeat the court's determination that the territory being annexed was contiguous. *North Barrington*, 144 Ill. 2d at 368, 579 N.E.2d at 887.

The annexed territory in *Glen Carbon* has some similarity to the area sought to be annexed here. Both have a long narrow leg extending from the point of contact with the municipality. There, the north leg extended for approximately one mile. Here, the west side of the "U" appears to extend a slightly longer distance before it turns into the bottom of the "U." There, the width of the leg was 500 to 2,000 feet. Here, the west leg became as narrow as 335 feet and does not appear to approach 2,000 feet at any point. In each case the legs had a similar length of contact with the municipality. Here, however, 660 feet of contact were on the west side of the west leg (see map line A-B) and 660 feet were on the north side of the west leg (see map line B-C) indicating that the leg extending from the point of contact with the municipality here was much narrower than there.

In *Glen Carbon*, the second leg of the territory went at right angles to the first leg for approximately three-fourths of a mile and was somewhat more narrow than the first, varying from 200 to 800

feet in width. This leg ended the territory involved there. Here, the "U" had a bottom of approximately half a mile, then an east leg which was somewhat wider and approximately the same length as the west leg. While we have no dispute with *Glen Carbon*, we deem that it goes about as far as permissible in approving annexation of territory which has qualities of a strip. Here, the distance around the "U" was substantially longer than that of the "L"-shaped area there.

We also note that here the area of Chatham to which the area sought to be annexed attaches is, itself, somewhat of an arm of Chatham. This is shown on the appended map. We do not know what the situation was in *Glen Carbon*, but we have no reason to believe that the same situation existed there. Chatham's village administrator testified that Chatham police respond to calls in the territory seeking annexation but did not patrol there. The length of the area around the "U" here, taken together with the slender nature of the portion of the territory closest to Chatham, supports the trial court's determination that "the territory in question *** is simply not a natural and gradual extension of the Village boundaries to areas which adjoin one another in a substantial physical sense."

The situation here is different than that in cases cited by petitioners where unusual configurations of land have been held to be properly annexed. In *In re Proposed Incorporation of the Village of Volo* (1992), 229 Ill. App. 3d 321, 592 N.E.2d 628, incorporation (Ill. Rev. Stat. 1989, ch. 24, par. 2—3—5) was sought for irregular tracts each touching another for at least 350 feet and covering in a spiderweb manner portions of an area which was almost square in nature. The area in the center and on most of the side had already been formed into a municipality, thus necessitating the spiderweb nature of the territory. The territory was not strung out as here. The appellate court reversed a circuit court order denying incorporation. In *In re Annexation of Certain Territory to the Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, 261 N.E.2d 746, the appellate court reversed a circuit court decision denying annexation. The property sought to be annexed touched the municipality for 300 feet on the south and 675 feet on the east. That 300-foot-wide strip extended north for an additional 1,312 feet, where it touched a large rectangular piece of property. There, the narrow corridor extended for only approximately one-quarter of a mile and did not create the lengthy strip which we determine to be crucial here.

■ We deem the question of whether the territory set forth in the petition meets the contiguity requirement of section 7—1—1 of the Code is mostly a question of law as no substantial dispute existed as to most of the underlying facts. The circuit court's order indicated that the connection with Chatham for one-eighth of a mile on the north and the same distance on the west was very meager. However, the main thrust of the order was that the strung out nature of the territory negated contiguity because it was contrary to the "natural and gradual extension" of the boundaries of Chatham. We interpret *Wild, Streamwood,* and *North Barrington* to all indicate that a long slender territory can lack contiguity regardless of the size of the original point of contact. The circuit court correctly interpreted the significance of those cases in this respect and applied it here.

Although we consider the question of whether contiguity existed here was mostly one of law, our decision to affirm is partly based upon recognition that to the extent factual questions existed, the usual rule that we should overturn the circuit court's decision only if it is contrary to the manifest weight of the evidence prevails. (*North Barrington,* 144 Ill. 2d at 362, 579 N.E.2d at 884.) The circuit court heard testimony by a Chatham official concerning the extent of police service which Chatham had been giving to the territory sought to be annexed and the extent to which that could be done after annexation. The court also viewed the premises. This adds weight to the deference we give to the circuit court's determination which was nevertheless mostly one of law.

While the configuration of the territory which petitioners seek to have annexed is not such as to create a "subterfuge" as stated in *Wild,* the property possesses too much of the attributes of a "strip annexation" which *North Barrington* deemed to negate "a natural extension" (see *North Barrington,* 144 Ill. 2d at 366, 579 N.E.2d at 886) of municipal boundaries. For this reason affirmance of the order of the circuit court dismissing the petition to annex is required.

■ Other issues raised by the parties and other grounds upon which the circuit court dismissed the petition can be dealt with summarily. The court found that the petition was also flawed because it was not signed by a majority of the "owners of record" of land in the territory described in the petition as required by section 7—1—2(a) of the Code (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—2(a)). The dispute in this regard arose because in many places the territory sought to be annexed bordered on township roads. The under-

lying fee interest in the outside half of those roads was owned by 14 or 15 people who had no other ownership interest in the territory. If these people are considered "owners of record," a majority of the "owners of record" did not join in the petition. For reasons which we explain in *In re Annexation of Approximately 280 Acres of Land to the City of Decatur* (1993), 245 Ill. App. 3d 770, 774-75, we hold that persons in the position of the 14 or 15 fee owners in the outer half of the township roads are not "owners of record" within the meaning of section 7—1—2(a) of the Code and the petition is not invalid for lack of signatures.

■ Section 7—1—2(d) of the Code permits a petitioner to withdraw from a petition to annex if "the signature of the petitioner was obtained by fraud or misrepresentation." (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—2(d).) The circuit court found that three of the petitioners should be permitted to withdraw their names from the petition because of violations of section 7—1—2(d) of the Code by proponents of the petition. Even if these three were properly permitted to withdraw, the petition would still contain sufficient names if the owners of the fee interests in the outside half of the township roads are not considered "owners of record." Moreover, we have examined the testimony in regard to the alleged misrepresentation. We find that, at most, the statements involved concerned either opinions or promises which may not have been kept. The petition could not have been properly dismissed on this issue.

■ Finally, the determination of the circuit court that Chatham need not be treated as the real petitioner here was fully supported by the evidence. Section 7—1—2 of the Code provides for initiation of annexation proceedings by a municipality as an alternative to a proceeding by a majority of owners of record and voters, as here. However, if that procedure is adopted, annexation is prohibited if the territory sought to be annexed includes any unsubdivided tract of 10 or more acres when the owner of the tract does not consent. Objectors assert that Chatham should be treated as the real petitioner because of the aid it gave petitioners. If Chatham were the petitioner, the petition would fail because of the existence of a 10-acre unsubdivided tract the owner of which did not consent to the annexation.

The evidence clearly showed that although Chatham gave the petitioners substantial help, including payment of attorney fees, petitioner Janice Logan initiated the matter by seeking help from Chatham officers. Accordingly, even if we had to decide this issue

in order to decide the case, we would not treat Chatham as the petitioner.

As we have indicated, the determination of the circuit court that the nature of the territory sought to be annexed does not meet the requirements of section 7—1—1 of the Code is supported by the law and the evidence. Accordingly, we affirm the order dismissing the petition to annex in bar of action.

Affirmed.

KNECHT and LUND, JJ., concur.

APPENDIX