In re PETITION FOR ANNEXATION OF CERTAIN PROPERTY TO THE VILLAGE OF PLAINFIELD, ILLINOIS (The Village of Bolingbrook *et al.*, Objectors-Appellants).

Third District    No. 3—93—0739

Opinion filed November 10, 1994.—Rehearing denied December 2, 1994.

314

Moss & Bloomberg, Ltd. of Bolingbrook, and Selfridge & Selfridge, of Plainfield (Norma J. Guess, Barry L. Moss, and Richard Selfridge, of counsel), for appellants.

Dunn, Martin & Miller, Ltd., of Joliet (Michael J. Martin, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:
Objectors appeal from the decision of the circuit court finding that a petition to annex land was valid. We affirm.

## I. FACTS
Five petitioners filed a petition to annex territory to the Village

of Plainfield, Illinois (Plainfield). The petition alleged that the petitioners were more than 51% of the owners of record of the territory sought to be annexed; that there were no electors residing in the territory; that the territory was not situated within the limits of any municipality; and that the territory was contiguous to the Village of Plainfield. The petition was signed by the attorney representing the petitioners. Attached to the petition was an affidavit containing the same statements found in the petition. The affidavit was signed by all five petitioners. The petitioner's attorney also attached an affidavit of his own stating that the petitioners were a majority of the property owners of record and no electors lived within the territory.

The Village of Bolingbrook (Bolingbrook), Paul Clarkson, Janice Clarkson, Alice Fern Brown and Ione Elizabeth Bushnell asserted an interest in the property to be annexed and objected to the petition. The objectors asserted that an elector who did not sign the annexation petition resided on their land; that the owners of fee title underlying the roads contained within the territory to be annexed should be considered owners of record, as should the Village of Bolingbrook by virtue of its ownership of an easement for an outfall sewer for a treatment plant under construction; and that the territory was not contiguous to the Village of Plainfield. On the day of the hearing in the circuit court, the objectors also asserted that the petition was insufficient on its face and requested that the petition be dismissed.

At the hearing in the circuit court the evidence showed, *inter alia*, that some of the objectors owned the parcel designated as "832186." The portion of this parcel located west of Naperville Road was included in the territory to be annexed; the eastern portion of parcel "832186" was not included within the annexation petition. Also it must be noted that after the filing of the instant petition, some of the objectors filed a voluntary petition to annex property known as the Clarkson-Steigle property to the Village of Bolingbrook. Additionally, the evidence indicated that objectors owned fee title under some of the roadways included in the instant petition; also, the Village of Bolingbrook owned a small sewer easement of which 25 feet are included in the territory to be annexed. For the sake of clarity, a map of the proposed annexation has been appended to this opinion.

The trial court found that the petition was valid. The objectors then filed this appeal.

## II. ANALYSIS

As aforesaid, on appeal, the objectors assert (a) the petition was insufficient on its face and therefore the motion to dismiss should have been granted; (b) the territory was not contiguous to Plainfield; (c) the circuit court improperly determined the number of electors residing in the territory; and (d) the circuit court erred in finding that fee title owners of roadways and the Village of Bolingbrook were not owners of record.

### A. SUFFICIENCY OF THE PETITION

Initially, the objectors assert that the trial court erred in refusing to dismiss the petition. Objectors assert that the petition failed to identify the property which petitioners claimed to own in the territory, and the petition did not state what number of signatures was necessary to form a majority of owners of record. Absent these allegations, the objectors argue, the petition should have been dismissed, and thereafter the Clarkson-Steigle petition to annex to Bolingbrook would have assumed priority. We disagree.

Appellants-objectors' argument is premised upon the decision of the Illinois Appellate Court, Second District, in *In re Petition to Annex Certain Property to the City of Wood Dale* (1993), 244 Ill. App. 3d 820. In *Wood Dale*, the objectors complained that the petition for annexation was deficient. The appellate court agreed, stating:

> "[T]he petition has signatures, but contains no specific facts regarding the addresses or residences of the signatories and whether they are in fact registered voters residing within the territory. In the absence of supporting facts, the designations 'owner,' or 'property owner,' or 'voter' are insufficient to provide the facts needed to satisfy the statute. The petition does not state what number of signatures is required to form a majority and what number qualified in any category. There is no circulator's certification of the signatures. While a conclusory affidavit itself may be sufficient if it tracks the language of a statute, we do not believe that a conclusory affidavit can cure the factual deficiencies of the petition." *Wood Dale*, 244 Ill. App. 3d at 835.

After the *Wood Dale* decision, however, the second district issued its decision in *La Salle National Trust, N.A. v. Village of Mettawa* (1993), 249 Ill. App. 3d 550, regarding the sufficiency of a disconnection petition. Paragraph 1 of the petition stated that the petition was brought under the disconnection statute. Paragraphs 2 and 3 alleged ownership of the property and that the property was within the corporate boundaries of the village. Paragraphs 4 through 9 made the bald assertions that each of the specific requirements for disconnection was met. Paragraph 10 merely noted that the village was made a party defendant to the proceeding. No specific facts

supporting these assertions were alleged; rather, petitioners merely cited, *in haec verba*, each of the six statutory requirements and asserted that they were met. *La Salle*, 249 Ill. App. 3d at 556-57.

In upholding the sufficiency of the petition, the *La Salle* court stated:

> "Illinois is a fact-pleading State. (*Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518.) Accordingly, a pleader is required to set out the ultimate facts which support his or her cause of action and legal conclusions unsupported by allegations of specific facts are insufficient. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 509-10.
>
> However, pleadings are not intended to create technical obstacles to reaching the merits of a case at trial; rather, their purpose is to facilitate the resolution of real and substantial controversies. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145.) To determine whether a cause of action has been stated, the entire pleading must be considered, and a cause should not be dismissed on the pleadings unless it clearly appears that no facts can be proved which will entitle the pleader to a judgment. (*Board of Education v. A,C&S, Inc.* (1989), 131 Ill. 2d 428, 438.) It is impossible to formulate a simple methodology to make this determination, and therefore a flexible standard must be applied to the language of the pleadings with the aim of facilitating substantial justice between the parties. (*Gonzalez v. Thorek Hospital & Medical Center* (1991), 143 Ill. 2d 28, 34.)" *La Salle*, 249 Ill. App. 3d at 557.

The *La Salle* court noted that the petitioners did not allege any specific facts to support their conclusions that the specific requirements of the statute have been met. Nonetheless, the appellate court provided several reasons why the pleadings did not warrant reversal. First, the specific requirements for the cause of action were set out by the statute itself; thus, it was not surprising that petitioners would track the language of the statute in formulating their petition. Second, while petitioners did not allege specific facts to support their assertions that the requirements of the statute were met, neither did it clearly appear that no set of facts could be proved which would entitle petitioners to a judgment in their favor. Third, while the appellate court recognized that more than mere notice pleading is required in Illinois, by tracking the statute the petition did allege every ultimate fact to be proved in order for petitioners to be entitled to judgment and the petition informed the respondents of what they must defend against. (*La Salle*, 249 Ill. App. 3d at 557-58.) For these reasons, the appellate court found that the trial court did not err when it denied respondent's motion to strike and dismiss the petition.

In resolving this case, we find the rationale of *La Salle* more persuasive than *Wood Dale*. We note that the *Wood Dale* discussion regarding the sufficiency of the petition constituted *dicta*; the appellate court itself specifically acknowledged this when it stated that the deficiencies in the petition constituted "an additional ground to affirm the trial court." *Wood Dale*, 244 Ill. App. 3d at 833.

Here, it is interesting to note that the objectors have never asserted that they were prejudiced by the alleged deficiencies in the petition. Rather, twice in their brief appellants argued that striking the petition would give priority to their petition to annex to Bolingbrook. Without reaching the merits of appellants' priority argument, we conclude that the request to dismiss was raised simply to create a technical obstacle to reaching the merits of a case at trial rather than to facilitate the resolution of real and substantial controversies. *La Salle*, 249 Ill. App. 3d at 557; *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145.

Moreover, in *Wood Dale* the appellate court was reviewing a dismissal by the circuit court. Here, as in *La Salle*, the circuit court denied the motion to dismiss. "The disposition of a motion to strike and dismiss for insufficiency of the pleadings is largely within the sound discretion of the court." *La Salle*, 249 Ill. App. 3d at 557, citing *Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299.

■ In sum, the language of the petition tracked the language of the statute. While the petition did not allege specific facts to support every assertion, neither did it appear that no set of facts could be proved which would entitle petitioners to a judgment in their favor. By tracking the statute, the petition alleged every ultimate fact to be proved in order for petitioners to be entitled to judgment. The petition informed the respondents of what they must defend against. We find that the circuit court did not abuse its discretion in denying the objectors' motion to dismiss.

## B. CONTIGUITY

The objectors also assert that the territory to be annexed was not contiguous with Plainfield. We disagree.

The purpose of requiring contiguity is to permit the natural and gradual extension of municipal boundaries to areas which adjoin one another in a reasonably substantial physical sense. (*In re Annexation of Certain Territory of the Village of Chatham* (1993), 245 Ill. App. 3d 786, 790-91; *People ex rel. County of St. Clair v. City of Belleville* (1981), 84 Ill. 2d 1, 12.) The contiguity requirement assures that the delivery of services, when necessary, is convenient for the city and efficient for its citizens; as much as practicable, sewer, fire, police and

other services should not have to pass under or over lands not within municipal boundaries. *Chatham*, 245 Ill. App. 3d at 791; *Belleville*, 84 Ill. 2d at 12.

Courts have adopted a liberal attitude on the issue of contiguity. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342.) While no case purports to announce a comprehensive rule suitable for the application of the contiguity requirement in all cases (*Chatham*, 245 Ill. App. 3d 786), cases rejecting annexation petitions have generally fallen into one of two categories. The first category is those cases involving impermissible "cornering." (See *Kildeer*, 19 Ill. 2d at 351 (wherein one piece of land cornered another so that a "person could not pass from one strip to the other without passing over land not within the village").) As aforesaid, in order to be considered contiguous within the meaning of the statute, the tracts of land in the territory must touch or adjoin one another in a reasonably substantial physical sense. (*Kildeer*, 19 Ill. 2d at 352; *Chatham*, 245 Ill. App. 3d at 791.) The second category is those cases wherein the shape of the territory and/or its relationship to other lands would defeat the purpose of the contiguity requirement, *i.e.*, to allow for the efficient delivery of sewer, fire, police and other services. (*Chatham*, 245 Ill. App. 3d at 791; *Belleville*, 84 Ill. 2d at 12.) Thus, in *Chatham*, the circuit and appellate courts rejected a petition wherein the shape of the property sought to be annexed was approximately U-shaped. Specifically, the west side of the leg was more than a mile long, with an irregular width of as little as 335 feet; the "U" had a bottom of approximately half a mile in length; and the east leg of the "U" was somewhat wider and approximately the same length as the west leg. The entire point of contact for this attenuated "U" was found on the northernmost 660 feet and westernmost 660 feet of the west leg. Also, the land located within the "U" belonged to another municipality (*Chatham*, 245 Ill. App. 3d at 788), making it difficult to provide services without having to pass under or over lands not within the municipal boundaries. In affirming the decision of the trial judge to deny annexation, the appellate court in *Chatham* stated:

> "The length of the area around the 'U' here, taken together with the slender nature of the portion of the territory closest to Chatham, supports the trial court's determination that 'the territory in question *** is simply not a natural and gradual extension of the Village boundaries to areas which adjoin one another in a substantial physical sense.' " *Chatham*, 245 Ill. App. 3d at 793.

However, it must be stressed that our supreme court has rejected the notion that "compactness" is implicit in the notion of "contiguity." (*Kildeer*, 19 Ill. 2d at 352.) As the supreme court stated:

"The legislature was familiar with that term [compactness] and used it in the School Code whenever it seemed necessary or desirable. We cannot but presume that its omission from the statute in question indicates a deliberate legislative choice and selection." *Kildeer*, 19 Ill. 2d at 352.

Most appellate decisions have upheld annexations to municipalities. (*Chatham*, 245 Ill. App. 3d at 792.) For example, in *Kildeer* (19 Ill. 2d 342), the supreme court concluded that the irregularly boundaried territory of the village, which was 2.15 miles long and 1.85 miles wide, was sufficiently contiguous between each of its parts to meet statutory requirements. In *Belleville* (84 Ill. 2d 1), a railroad right-of-way which had a common boundary with the municipality for at least 1,158 feet was "contiguous" to the municipality even though the right-of-way projected beyond the city's limits by several hundred feet. In *In re Petition to Annex Certain Territory to the Village of North Barrington* (1991), 144 Ill. 2d 353, annexation of two lots depended upon another lot—labeled "lot 1"—to establish contiguity, but the owner of lot 1 objected to annexation. The supreme court held that lot 1 must be annexed if the remaining territory was to be annexed, and that although the territory sought to be annexed had an irregular border, the annexation did not constitute improper strip annexation or cornering. In *In re Annexation of Certain Territory to the Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, the property sought to be annexed touched the municipality for 300 feet on the south and 675 feet on the east, and a 300-foot-wide strip then extended north for an additional 1,312 feet, where it touched a large rectangular piece of property. The appellate court reversed a circuit court decision denying annexation. In *In re Petition for Annexation of Lands of the Village of Glen Carbon* (1970), 130 Ill. App. 2d 821, territory was permitted to be annexed although it had "an extremely irregular boundary" and resembled "an index finger bent 90 degrees at both of its joints" with a total of 230 acres and an extremely irregular boundary. (*Glen Carbon*, 130 Ill. App. 2d at 822.) Specifically, the annexed property had a common boundary with the village of 1,312 feet near the northern line of the village, with the property then extending north one mile in an irregular fashion, varying in width from approximately 500 to 2,000 feet, then east approximately 2,000 feet and 800 feet wide, then south approximately 4,000 feet in widths varying from 200 to 800 feet. In *In re Proposed Incorporation of the Village of Volo* (1992), 229 Ill. App. 3d 321, incorporation was sought for irregular tracts each touching another for at least 350 feet and covering in a spiderweb manner; the other areas in the center and on the side of this territory were already part

of the municipality. Again, the appellate court reversed a circuit court order denying incorporation.

Interestingly, in none of the aforementioned cases, including the *Chatham* case, did the court of review overturn a circuit court's decision to permit annexation. We see no reason to do so in this case.

In this case the territory to be annexed is approximately C-shaped. (See map attached hereto.) The bottom leg of the "C" is approximately one-half mile long and 300 feet wide with the vast majority bordering upon Plainfield. The middle leg of the "C" is a trapezoidal piece of land that increases in width as it extends northward. The northeastern corner of the middle leg is connected the top leg of the "C," a rather square piece of land.

■ As noted above, the contiguity requirement and its concern for the natural and gradual extension of municipal boundaries to areas which adjoin one another in a reasonably substantial physical sense are intended to allow for the delivery of services in a manner that is convenient for the city and efficient for its citizens. As much as practicable, sewer, fire, police and other services should not have to pass under or over lands not within municipal boundaries. (*Chatham*, 245 Ill. App. 3d at 791; *Belleville*, 84 Ill. 2d at 12.) In *Chatham*, these concerns could not be satisfied since only a small portion of one leg of a "U" had contact with the existing city boundary; the territory effectively surrounded property belonging to another municipality. In the present case, however, most of the entire southern side of the bottom leg of the "C" contacts the northern boundary of Plainfield. Moreover, the territory to be annexed does not effectively surround property belonging to another municipality. Additionally, here, all three legs of the "C" contact Naperville Road, thus facilitating the extension of services to all of the annexed territory. (See attached map.)

Finally, our decision to affirm is based in part upon our recognition that, to the extent any factual questions exist, the usual rule that we should overturn the circuit court's decision only if it is contrary to the manifest weight of the evidence prevails. (*Chatham*, 245 Ill. App. 3d at 794; *North Barrington*, 144 Ill. 2d at 362.) We find that the decision of the circuit court was neither against the manifest weight of the evidence nor contrary to existing law.

## C. NUMBER OF ELECTORS

Section 7—1—2 of the Illinois Municipal Code requires that a petition for annexation shall be signed by "a majority of the electors, if any, residing in the territory." (65 ILCS 5/7—1—2(a) (West 1992).) In this case, the petitioners asserted that no electors lived on the land

to be annexed. The objectors disagreed, contending that an elector living on the eastern portion of parcel "832186" should have been included in the petition even though only the western portion of parcel "832186" was to be annexed. The objectors argue that when one portion of a parcel is included in the territory to be annexed, electors living anywhere on that parcel must be counted for purposes of the petition even if the actual residence of the electors is not included in the territory.

The objectors cite *In re Petition of the Town of Normal for Annexation of Certain Territory* (1972), 5 Ill. App. 3d 363, in support of their argument. In *Normal*, the court construed a portion of the annexation statute which provided that no "tract of land" in excess of 10 acres in area could not be included in the annexation without the express consent of the owner. Normal had tried to annex a portion of the objector's land which did not exceed 10 acres. The court held that the statutory language meant that if the entire parcel was more than 10 acres in area, no portion could be taken without the express consent of the owner. Otherwise, Normal could annex 9.9 acres, then another 9.9 acres, until the entire parcel was annexed and do it all without the consent of the owner.

We find *Normal* distinguishable. The words construed in *Normal* were "tract of land" and the words at issue here are "residing in the territory." Having one's home included in a petition for annexation carries different implications from having only a portion of one's property included. Questions regarding sewer treatment facilities and provision of city water services arise, along with issues of police and fire protection, school district residence and taxes involve the residence. Few of these issues will matter if there is no home on the land to be annexed.

■ Thus, we hold that only electors whose residences are included within the territory to be annexed need be counted for purposes of the petition for annexation unless it appears that the territorial boundary lines have been drawn specifically to exclude electors. Because there is no evidence in the record that the petitioners in this case deliberately drew the annexation map in order to cut out any electors that may have been residing in any of the homes located on or near the property, we hold that the trial court correctly concluded that the elector whose residence is not within the territory should not have been counted for purposes of the annexation petition.

## D. OWNERS OF RECORD

The objectors argue that the owners of fee title underlying the roadways but who do not reside within the territory must be counted

as owners of record and that the Village of Bolingbrook must also be counted as an owner of record. Again we disagree.

1. Owners of Fee Title Under Roadways

This issue of whether owners of fee title under roadways should be counted as owners of record was settled in *In re the Annexation of Approximately 280 Acres of Land to the City of Decatur* (1993), 245 Ill. App. 3d 770. Therein, the court held that owners of the fee interest underlying the roads within the territory to be annexed did not hold the kind of interest that would allow them to be counted as owners of record. The court held that the purpose of requiring the annexation to include the far side of the roadways involved was to prevent questions about which government entity had the responsibility for maintaining the roads. This purpose did not otherwise affect the interest of the owners of fee title, so they could not be counted as owners of record.

■ We agree with the *Decatur* conclusion and see no reason to part from it. Therefore, we hold that the trial court was correct in ruling that the fee title owners of the property underlying the roads located within the territory to be annexed are not owners of record for the purpose of the petition for annexation.

2. Village of Bolingbrook's Easement

■ Finally, Bolingbrook claims that it should be considered an owner of record because it owns a small sewer easement of which 25 feet are included in the territory to be annexed. In *Woodward Governor Co. v. City of Loves Park* (1948), 335 Ill. App. 528, the court held that the owner of a railroad right-of-way easement was an owner of record. The court held that the railroad controlled the use of the property and the underlying fee had little, if any, value. In this case, however, Bolingbrook does not have such control of the use of the property; it merely has the right to use the land in a limited capacity. Therefore, we hold that the trial court did not err in determining that the Village of Bolingbrook was not an owner of record.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER and BRESLIN, JJ., concur.